THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY

*v.*

CHARLES S. BARTLETT *et al.*

*Filed at Ottawa May 12, 1887.*

1. CONTRACTS—*construction*—*giving effect to words different from their ordinary signification.* The general rule requiring effect to be given to all the words of an instrument, is subject to well recognized limitations, the chief of which is, that the instrument must be so construed as to effectuate the intention of the parties to it. For this purpose a word may sometimes be construed to mean almost the opposite of its commonly accepted signification. Thus, the word "and" is often construed to mean "or," and to give effect to the intention, a word or phrase may be excluded or wholly disregarded.

2. SAME—*bond of an agent conditioned to account for and pay over moneys—extent of liability —in case of theft or robbery.* An agent or paymaster of a railway company, whose duty it was to receive and pay out large sums of money for the company, gave a bond, conditioned that he would faithfully perform the duties required of him as paymaster, "*and* promptly

pay over and promptly account 'for all moneys belonging" to the company, received by him as such agent, and should deliver to the company all property belonging to it, when required: *Held*, that the first clause, to faithfully perform *all* the duties required of him, covered the whole ground, and that which followed was nothing more than a mere specification of the principal duties incident to his employment, and added nothing to his liability, and did not make him an insurer of the moneys in his hands, against theft or robbery, without his fault or negligence.

3.  But even conceding the undertaking of the principal in the bond, to pay over and account for all moneys, was an absolute one, in such sense as to make him an insurer, and that his sureties were equally bound with him for its performance, still, it would not follow that they would be so bound except where the money was in his exclusive possession, as, when he would take it out of the safe for the paying of it out on the pay-rolls of the company. So where the company required such agent to keep the moneys in a room not properly protected against the entry of thieves or burglars, and which was occupied by other servants jointly with such agent, one of which other servants had access to the safe where the money was kept, and a large sum was stolen from the safe during the temporary absence of such agent, without any neglect of duty or want of care on his part, it was *held*, that such agent could not be held liable on his bond given to the company, conditioned that he would account for all moneys coming to his hands.

4.  SAME—*release or waiver of performance by acts of obligee.* If a party covenants with another to perform any lawful act, there will be an implied undertaking on the part of that other that he will do nothing to prevent the performance or render it impossible; and if such other does prevent performance or renders it impracticable, this will operate to discharge the covenanting party from liability for his failure to perform.

5.  ERROR WILL NOT ALWAYS REVERSE. This court will not reverse a judgment clearly right upon the undisputed facts of the case, for errors that could not have changed the result.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding.

Messrs. STILES & LEWIS, for the appellant:

Appellees contend, and the court below so ruled, that the bond in no way enlarged Bartlett's liability, and that it was a mere security for the faithful discharge of his duties as paymaster. We insist that this construction of the bond is

erroneous, and that it does, in most explicit terms, impose on Bartlett something in addition to what the law required of him by virtue of his employment, and that the other construction is virtually to expunge the two last clauses of the bond. A familiar rule of construction requires that we shall give force and effect to all the words employed by the parties, when this is possible. *Bowman* v. *Long,* 89 Ill. 19; *McCarty* v. *Howell,* 24 id. 341.

When a bailee undertakes to keep the goods of his bailor safely, it is no answer for a failure to return them, that they have been stolen. Such undertaking is a special contract enlarging his common law liability. *Kettle* v. *Brownsall,* Willes, 118; *Southcote* v. *Bennett,* 4 Coke, 83 b; *Drake* v. *White,* 117 Mass. 10; *Knowles* v. *Dabney,* 105 id. 407; *Harmony* v. *Bingham,* 12 N. Y. 99; *Steele* v. *Buck,* 61 Ill. 343.

It has been repeatedly held in suits on penal bonds, that the loss of money by theft, or otherwise, without the fault of the principal obligor, is no defence to a suit upon his bond, conditioned that he will safely keep, or that he will pay over, such money. *United States* v. *Prescott,* 3 How. 578; *United States* v. *Morgan,* 11 id. 154; *United States* v. *Dashiel,* 4 Wall. 182; *United States* v. *Kebler,* 9 id. 83; *Boyden* v. *United States,* 13 id. 17; *Beavans* v. *United States,* id. 56; *United States* v. *Thomas,* 15 id. 337; *State* v. *Harper,* 6 Ohio, 607; *Halbert* v. *State,* 22 Ind. 125; *Merbeck* v. *State,* 28 id. 86; *Inglis* v. *State,* 61 id. 212; *New Providence* v. *McEachren,* 33 N. J. L. 339; 35 id. 528; *State* v. *Morse,* 74 Mo. 413; *District Township of Taylor* v. *Morton,* 37 Iowa, 550; *District Township of Union* v. *Smith,* 38 id. 9; *Muzzy* v. *Shattuck,* 1 Denio, 233; 7 Hill, 584; *Commonwealth* v. *Comly,* 3 Pa. St. 372; *Commissioners* v. *Jones,* 18 Minn. 199; *County of Redwood* v. *Tower,* 28 id. 45; *Thompson* v. *Trustees,* 30 Ill. 99; *Clay County* v. *Simonson,* 1 Dak. 403; *Jefferson County* v. *Linberger,* 3 Mont. 231; *Boggs* v. *State,* 46 Texas, 10.

Mr. JOHN S. COOPER, and Mr. WILLIAM J. HYNES, for the appellees:

The obligation sued on was not an absolute guaranty by appellees for the safe keeping of the money against possible loss from theft or other casualty, occurring without Bartlett's fault. *Vene* v. *Smyth,* 2 Kibble, 764; 2 Levins, 5; 1 Ventris, 121.

The bond should be construed in the light of the intention of the parties in exacting and accepting it, on the one hand, and in executing it, on the other. 1 Chitty on Contracts, 104; 2 Kent's Com. 555; *Stout* v. *Whitney,* 12 Ill. 227; *Walker* v. *Douglas,* 70 id. 445.

That intention is to be ascertained from the language used by the parties in their written contract, and also from the circumstances under which the contract was entered into. *Robinson* v. *Stow,* 65 Ill. 508.

As to the question of liability on this bond for a loss by theft, see *Walker* v. *British Guarantee Association,* 18 A. & E. 277; 83 E. C. L. 276; *Bank* v. *Hill,* 1 Stew. 201; *Bank* v. *Clossy,* 10 Johns. 271; *Ross* v. *Hatch,* 5 Iowa, 149; *United States* v. *Prescott,* 3 How. 578; Murfree on Official Bonds, sec. 464.

The same rule of construction insisted upon by appellant, if applied to the words in the bond, "promptly pay over and promptly account for" the company's moneys, would release the appellees from liability for the moneys stolen, under the facts in this case.

Where the master places entire charge of his business, or of a distinct branch of it, in the hands of an agent, exercising no discretion, and no oversight of his own, it is manifest that the negligence in exercising ordinary care in supplying and maintaining suitable instrumentalities is breach of duty, for which the master should be held responsible. *Railroad Co.* v. *Ford,* 17 Wall. 554; *Mullen* v. *Steamship Co.* 78 Pa. St. 26; *Whelan* v. *Centenary Church,* 62 Md. 326; 2 Thompson on

Negligence, sec. 5 of notes, p. 974; Shearman & Redfield on Negligence, secs. 102, 103.

Nor is this duty satisfied by having performed it once,—it is a continuing duty. The Supreme Court of Illinois, in *Chicago and Northwestern Railroad Co.* v. *Swett,* 45 Ill. 197, says: "Such an obligation is permanent, and can not be avoided by the delegation of the power or authority to any other or number of persons."

That the acts of omission and commission, as to the security of guarding the approaches to the vault, were the acts of the company, the principles stated in the authorities above cited would appear to place beyond question. In addition, see *Railroad Co.* v. *Welsh,* 52 Ill. 183; *Schooner "Norway"* v. *Jensen,* id. 373; *Railroad Co.* v. *Jackson,* 55 id. 492; *Railroad Co.* v. *Moranda,* 93 id. 302.

Mr. Justice Mulkey delivered the opinion of the Court:

On the 6th day of December, 1882, Charles S. Bartlett, as principal, and John G. Shortall, Samuel D. Barker and William Chisholm, as sureties, executed and delivered to the Chicago, Burlington and Quincy Railroad Company, a bond, in the usual form, in the penal sum of $40,000, which was required of Bartlett as paymaster of the company. The condition of the bond is as follows:

"The condition of this obligation is such, that if the said Charles S. Bartlett shall well, truly and faithfully perform the duties required of him by said company as paymaster, and promptly pay over and promptly account for all moneys belonging to said company which shall be received by him as such agent, and shall deliver over to said company all property of said company when required, then this bond to be void, otherwise to be in full force and effect."

Some time between one and two o'clock in the afternoon of March 1, 1884, while Bartlett was out at lunch, some one,

to him unknown, opened the company's safe, in which he kept the moneys of the company in his hands as paymaster, and abstracted therefrom $26,833.54. He at once reported the facts to the company, and has not otherwise accounted to it for the loss. On the 19th of May, 1884, the company brought an action in the Superior Court of Cook county, against Bartlett and his sureties on the bond, to recover the amount of money so abstracted from the safe. The cause was heard before the court and a jury, resulting in verdict and judgment for the defendants. On the company's appeal, the judgment of the Superior Court was affirmed by the Appellate Court for the First District, whence the case is brought here for review.

With respect to the facts in the case, with one exception, we find no material conflict in the testimony. Nor is it thought there is any serious difficulty in regard to the law applicable to the facts. While but very few of the cases cited in the briefs, on either side, can be regarded as directly in point, yet we think there is but little, if any, doubt as to the general principles which must govern the case.

Previous to the execution of the bond sued on, Bartlett had, so far as anything to the contrary appears from the record, faithfully and satisfactorily served the company in the capacity of paymaster, without bond, for about fifteen years. He belonged to the treasury department of the company, consisting of himself, the cashier, and general book-keeper, including their respective assistants. James C. Peasley, the treasurer and second vice-president of the company, was the head of this department, and all belonging to it were subject to his orders. Shortly after the giving of the bond, the company removed its general offices, including the treasury department, from the corner of Randolph street and Michigan avenue, to the second floor of the company's new building, on the corner of Franklin and Adams streets. On this floor, the paymaster, cashier and book-keeper all occupied the same room, known as the "treasurer's room." Connected with this

room was a large vault, containing two safes belonging to the company, one of which was for the exclusive use of the cashier. The other was a double safe, one compartment of which was used by the paymaster, and the other by the bookkeeper. There was no connection, however, between the two compartments. Each had its separate door and separate lock. Near this safe was a door which led into an adjoining vacant room, the doors of which were unfastened, and opened into an outer court near a back stairway, which led to the basement below, from which there was access to the street. When the robbery was discovered, this door near the safe was found standing ajar, though it was closed and supposed to be locked when Bartlett left the office. Before moving to the new building, Bartlett called the attention of Peasley to the danger from this door, and suggested that it should be "bricked up," to which Peasley replied that it would be sufficiently secure with a Yale lock. On moving into the new offices, this door was securely locked, and the key taken possession of by Mr. Smith, the cashier. It seems, however, that in the absence of Bartlett, a few weeks before, this door had been opened for the purpose of taking a large new safe through it, and that in doing so the building was so sprung that the lock did not properly work. Mr. Smith, who had charge of the room, and whose duty it was to look after repairs, gave orders for the repair of the lock, and it appears to have been done; but whether the door was locked and the key returned to Mr. Smith, the keeper of it, is a matter which the evidence leaves in doubt. It is clear, however, that Bartlett had no cause to suspect that anything was wrong with the door or the lock, and it is equally clear that it was no part of his duty to look after that matter. That duty devolved on Smith, the cashier, and not on him. It further appears, that it was a custom of the office to never leave it vacant in the daytime, and it is a conceded fact that on the occasion of the robbery Mr. Smith was in the office, though his posi-

tion at his desk, where he was sitting at the time, did not command a view of the safe. The evidence also tends to show, that it was the custom of the office, and had been for many years, to set the safes in the daytime on the last number, instead of locking them or throwing out the combination. Bartlett, however, after maturely reflecting upon the matter, swears, positively, that on this particular day he locked the safe, and gives as a reason for it, that about noon he took out of the safe something over $3000, which he knew would be all the money he would have to pay out that day, and consequently would not want to go into it again before the next morning, and that he therefore locked the safe, as he always did at the close of the day. Appellant, on the other hand, stoutly maintains that the safe was set on the last number, and certain alleged admissions by Bartlett are relied on to prove it. Whatever the real fact may be with respect to this matter, we do not attach the importance to it which seems to be given it in the argument. Another important fact is, that Bartlett was required by the treasurer to give the cashier the combination of the safe, and Mr. Smith had it at the time of the loss. Moreover, the company furnished Bartlett's assistants in the office without even consulting him as to one of them.

Such is the general outline of the facts. The position of appellant's counsel is, that the condition of the bond must be so construed as to give force and effect to all the words contained in it, and that when thus construed, it makes appellees absolute insurers of all moneys which came into Bartlett's hands as paymaster. The general rule requiring effect to be given to all the words of an instrument, to which counsel has adverted, is not questioned; but there are well recognized limitations upon it that are just as well settled as the rule itself, the chief of which is, that an instrument must be so construed as to effectuate the intention of the parties to it, and for this purpose a word will sometimes be construed to

mean almost the very opposite of its commonly accepted sig-
nification. Thus, "and," the very word to which counsel
attach so much significance in this case, is often construed
to mean "or." So, to give effect to the intention of the par-
ties, a word or phrase will be excluded or disregarded alto-
gether, if necessary.

In determining whether by the use of the words, "and shall
promptly pay over and promptly account for all moneys,"
etc., it was intended to impose upon Bartlett and his sureties
a higher degree of responsibility than is indicated by the pre-
ceding words, "shall well and truly and faithfully perform
the duties required of him by the company as paymaster,"
it is necessary to take into consideration Bartlett's relation
to the company, the nature of his existing employment, the
duties it imposed, and the degree of responsibility which the
law annexed to it. The relation was that of master and
servant—principal and agent. The employment was one of
confidence and trust, which required of him the handling and
paying out for the company, from time to time, large sums
of money, and of accounting therefor. With respect to the
moneys in his hands for such purpose, Bartlett was a mere
bailee for hire, and, consequently, the measure of his legal
liability was good faith, and ordinary skill, care and diligence
in the performance of the duties imposed by his employment.
Such being the case, what was the object in taking the bond?
Was it to entirely change the character of his responsibility
by making him an absolute insurer of all moneys that came
into his hands, without regard to his care, diligence or faith-
fulness to the company? We can not think that such was
the object or purpose of the bond. On the contrary, we think
it was given simply to secure the faithful performance of the
duties which the law cast upon Bartlett as paymaster of the
company, and nothing more,—or, in other words, the object
of the bond was to secure the performance of existing duties,
and not to create new ones. The condition that he should

"well, truly and faithfully perform the duties required of him as paymaster," we think covers the whole ground. "The duties," in that connection, means *all* the duties devolving on him as paymaster, and that which follows, in respect to paying over and accounting for moneys received by him, is nothing more than a mere specification of the principal duties incident to his employment, which were fully covered by the more general provision that preceded it. Clearly, the specifying of these duties did not change Bartlett's liability. When he accepted the office of paymaster, and entered upon his duties, fifteen years before that, although he gave no bond, he nevertheless, by implication of law, promised the company that he would well and truly pay over and account to it for all moneys received by him. This was a continuing promise and obligation on his part, and was not at all changed by the giving of the bond. His duties and obligations remained precisely the same as they were before the bond was given. Until then he alone was bound. Afterwards, his sureties were equally bound with him. The object of the bond, therefore, as already seen, was to give the company additional security for the performance of Bartlett's duties as they existed before and after its execution. As bearing upon this subject, Mr. Peasley's statement, which is a part of appellant's own testimony, is not without significance. He says: "The bond was exacted by me of Mr. Bartlett, as security for the faithful performance of his duties, and for accounting for such sums of money as he should have in his hands."

There is another view, however, to be taken of this case, which we think supports the conclusion reached by the lower courts. Let it be admitted, for the purposes of the argument, that the undertaking of Bartlett to pay over and account for all moneys was an absolute one, in the sense claimed by appellant, and that his sureties are equally bound with him for its performance, still, it does not follow that they would be so bound except where the money was in his exclusive

possession, as, when he took it out of the safe for the paying of it out on the pay-rolls of the company. The money was kept in the company's safe with the knowledge and tacit approval of the company, and we attach no importance to the statement of Mr. Peasley that it was not required to be kept there. When the company provided a safe, and placed it in the treasury department for Bartlett's use, and directed him to leave the key of it,—that is, the combination of the lock,— with the cashier, who had charge of the room in which the safe was kept, it was, in legal effect, a direction to Bartlett to keep his moneys there. That was the proper place for it. Convenience, the character of Bartlett's duties, and the exigencies of the company's business, alike required it should be there. That this safe was practically open at all times to the cashier, by the company's direction, and that the latter was in the room (and most likely by himself) when the robbery occurred, are undisputed facts. In addition to all this, there is no pretence or claim that the money was taken by Bartlett. We are clearly of opinion that a loss occurring under these circumstances is not one against which the bond in question was intended to indemnify the company.

Again, conceding the contract to be absolute, its performance, as in the case of all other contracts, might nevertheless be waived or discharged by the obligee or promisee, either expressly or by implication of law. If one covenants to deliver to another a sum of money belonging to the latter, on a certain day, or to do any other specific lawful act, the covenantee impliedly promises and undertakes that he will do nothing in the meanwhile to prevent performance at the time, or to render it impossible altogether; and a breach by the covenantee of such implied promise and undertaking will be a sufficient answer to any action brought by the latter for the non-performance of the defendant's covenant. More shortly stated, it is an elementary, fundamental rule of law, founded upon the plainest principles of justice, that the promisor will in

all cases be discharged from liability if performance is prevented by the default, negligence or other wrongful act of the promisee. Applying this principle to the case in hand, we think, upon the facts stated, the jury were justified in finding (as we must assume they did) there was such negligence on the part of the company in respect to the door of the office opening into the adjoining room, and in leaving the doors of the latter room not fastened at all, as to defeat any right of action on the bond. Had the door connecting the vacant room with the office been "bricked up," as suggested by Bartlett, or otherwise securely closed, the robbery could not have been possible in the way it was effected.

Upon the undisputed facts in the case, we do not feel called upon to review the rulings of the trial court. We are led to adopt this course from two considerations. In the first place, we are fully satisfied with the treatment those questions have received in the opinion of the Appellate Court, and it would therefore be a useless task to go over the same ground again. In the second place, for reasons already stated, we think it clear that the judgment below is, upon the undisputed facts, right. Conceding, therefore, that some errors on the trial may have intervened, still the judgment should not be reversed, as another trial would necessarily result the same way.

The judgment will be affirmed.

*Judgment affirmed.*

Mr. Justice Craig, dissenting:

I do not concur with a majority of the court in the decision of this case, and the magnitude of the case and importance of the questions require that I should state the grounds upon which I predicate my opinion.

Charles S. Bartlett, having been appointed paymaster of the Chicago, Burlington and Quincy Railroad Company, executed and delivered to the company the following bond:

"*Know all men by these presents*, that we, Charles S. Bartlett, as principal, and John G. Shortall, Samuel D. Barker and William Chisholm, as sureties, are held and firmly bound unto the Chicago, Burlington and Quincy Railroad Company, in the sum of $40,000, for the payment of which, well and truly to be made, we bind ourselves, our heirs, executors and administrators, firmly by these presents.

"The condition of this obligation is such, that if the said Charles S. Bartlett shall well, truly, faithfully perform the duties required of him by said company, as paymaster, and promptly pay over and promptly account for all moneys belonging to said company which shall be received by him as such agent, and shall deliver over to said company all property of said company when required, then this bond to be void, otherwise to be in full force and effect.

"Witness our hands, the sixth day of December, 1882.

CHARLES S. BARTLETT, *Principal.*

JOHN G. SHORTALL,

SAMUEL D. BARKER,

WILLIAM CHISHOLM,

"Approved, J. C. PEASLEY, *Treasurer.*"     *Sureties.*

As stated in the opinion of a majority of the court, on the first day of March, 1884, while Bartlett was paymaster, $26,833.54 of the company's money was stolen from his safe, and this action was brought on the bond, against Bartlett and his sureties, to recover the amount stolen.

The circuit court refused an instruction asked by plaintiff, as follows:

"5. The jury are instructed, that the bond in question is an undertaking that the defendant Bartlett shall pay over all moneys belonging to the company, received by him as paymaster, and that such payment is not excused by the fact that such moneys were lost, by theft or otherwise, with or without his fault."

Other instructions, in a different form, involving the same principle, were refused. On the other hand, the court gave the following instructions for defendant:

"4. The jury are instructed, that whilst a person having the custody of the money of another, as the latter's agent, upon a salary paid by his principal, is under a duty to take precautions for the safety and security of such money in proportion to the amount thereof and the danger thereto from depredation, yet such agent is not an insurer of the safety and security of such money against possible loss from theft or other casualty, in the absence of an express agreement between the parties to that effect.

"5. And the jury are further instructed, that the bond or written agreement sued on in this case does not constitute such special agreement for the absolute safety or security of the plaintiff's money entrusted to defendant Bartlett, as its paymaster and agent, against possible loss, from theft or other casualty, not occasioned by the negligence or fault of Bartlett."

The plaintiff failed to recover in the circuit court, and the ruling of the court on the instructions, in its construction of the bond in suit, presents the principal question for decision here.

This action was not brought against Bartlett for a failure to observe a duty which arose from an acceptance of the office of paymaster,—a duty which the law might imply if it was a different question; but the action was brought upon a contract, which was reduced to writing and executed by the parties; and by that contract the rights, duties and obligations of the parties must be determined. The rule is a familiar one, that where parties reduce their contract to writing, their rights, duties and obligations must be determined by the terms and conditions of that contract, and when the language used is unambiguous, the intention of the parties must be determined from the terms of the agreement.

There is no ambiguity in the contract upon which this action was brought. Its terms and conditions are plain and readily comprehended. The condition of the bond requires Bartlett to well, truly, faithfully perform the duties required of him by said company, as paymaster, and promptly pay over and promptly account for all moneys belonging to said company which shall be received by him as such agent, and shall deliver over to said company all property of said company when required. Here, by the terms of the bond, these duties are enjoined by the contract, and as said in *Bowman* v. *Long*, 89 Ill. 23 : "A familiar rule of interpretation requires that we shall give force and effect to all the words employed by the parties in making their agreement, when this is possible." Observing this rule, what obligation was imposed by the contract?

If the bond contained no obligation except the first one, which provides that Bartlett shall well, truly, faithfully perform the duties required of him by said company as paymaster, the construction placed upon it by the circuit court would, no doubt, be correct, as this clause of the instrument would be observed if Bartlett was diligent in the discharge of his duties, free from negligence, honest, reasonably skillful, and careful in the performance of his duties. But the bond does not stop with the duties we have enumerated, requiring a faithful discharge of his duties as paymaster, but a second obligation imposed is, that the paymaster shall promptly pay over and promptly account for all moneys belonging to the company, which shall be received by him. Can it be said that this clause was inserted for no purpose whatever, or that it can be disregarded in placing a construction on the instrument? We see no ground upon which this can be done. This clause of the bond was placed there for a purpose, and that purpose, no doubt, was the one indicated by the plain language used by the parties,—that is, to require Bartlett to pay over all moneys he might receive, and render a just and

true account, showing an itemized disposition of the same. In no other manner could this clause of the bond be complied with on the part of the paymaster. The bond also contains a third condition, that Bartlett shall deliver over to the company all property belonging to the company, when required. This clause may embrace money or any other description of property in the hands of the paymaster, which he would be bound to deliver over to the company at any time a demand might be made upon him.

But it is said that the money was stolen without the fault of Bartlett, and on this account he is not liable on the bond. This presents the question, whether the performance of the condition of a bond can be excused by the act of a third party. An early and a leading case on this question is *United States* v. *Prescott*, 3 How. 587, where it was held that the felonious taking and carrying away public money in the custody of a receiver of public moneys, without fault or negligence on his part, does not discharge him and his sureties, and can not be set up as a defence to an action on his official bond. It is there said: "The condition of the bond has been broken, as the defendant, Prescott, failed to pay the money received by him, when required, and the question is, whether he shall be exonerated from the condition of his bond, on the ground that the money had been stolen from him. The objection to the defence is, that it is not within the condition of the bond, and this would seem to be conclusive. * * * There is no principle on which such a defence can be sustained. The obligation to keep safely the public money, is absolute, without any condition, express or implied; and nothing but the payment of it, when required, can discharge the bond."

In *Thompson* v. *Board of Trustees*, 30 Ill. 99, where an action was brought on the bond of a township treasurer for a failure to pay over money which had been received by him, and then stolen, the *Prescott case* was cited with approval, and it was held, that township treasurers were insurers of public funds

coming into their possession. The condition of the bond in that case, upon which the action was brought, provided that the township treasurer shall faithfully discharge all the duties of said office, according to the laws which are or may hereafter be in force, and shall deliver to his successor in office all moneys, books, papers, securities and property in his hands as such township treasurer. The defence there interposed was the same as here,—that the money had been stolen. But it was held that the treasurer was liable; that his liability grew out of his official bond; that the contract was absolute, without any condition, express or implied. There are many other cases holding the same doctrine. *Boggs* v. *State*, 46 Texas, 10; *United States* v. *Thomas*, 15 Wall. 337; *State* v. *Harper*, 6 Ohio, 607; *Ingles* v. *State*, 61 Ind. 212; *State* v. *More*, 74 Mo. 413; *Muzzy* v. *Shattuck*, 1 Denio, 233; *Commonwealth* v. *Comly*, 3 Pa. St. 372.

In the decision of the case last cited, the court said: "The opinion of the court in the case of *United States* v. *Prescott*, is founded in sound policy and sound law. The responsibility of a public receiver is determined, not by the law of bailment, which is called in to supply the place of a special agreement where there is none, but by the condition of his bond. The condition of it, in this instance, was to 'account for and pay over' the moneys to be received; and we would look in vain for a power to relieve him from the performance of it. True, there are many cases of relief against a legal right arising out of a contract,—not one of which, however, bears even a remote resemblance to the present."

The bond in the case against Comly was given by a collector of tolls, conditioned that he would "account for and pay over all moneys he may receive for tolls," the language being almost identical with that contained in the bond given by Bartlett, and the defence interposed, as here, was, that the money was stolen, without fault on his part. But the defence

was not sustained, the court holding the collector liable, by the terms of the bond.

It has, however, been suggested, in the argument, that in the cases cited, the actions were brought on official bonds of officers, and such actions have been sustained on the ground of public policy. I think a close examination of the cases cited will show that public policy had nothing to do with the decisions in those cases, but, on the other hand, the decisions rest on the terms of the contract,—the conditions of the bonds executed by the parties. What reason could be assigned why one rule of law should be applied where the action was on an official bond of a public officer, and a different rule invoked where the suit was on a bond of a bank officer, or paymaster in a railroad company, the condition of the bonds in the two cases being alike? I am unable to perceive upon what principle a distinction can be made.

But a case which I regard as directly in point, is *Steele* v. *Buck*, 61 Ill. 344, which was an action on a bond given to secure the performance of a charter-party, under which Vogell & Crandall were to have the use and possession of a certain propeller, to man and run her during the season of 1869, upon the lakes, and navigable waters connecting with the same. In addition to what has been stated, the charter-party contained a covenant that they would deliver the propeller at the port of Chicago, at the close of the navigation season for that year, in as good condition as she then was, reasonable wear excepted. The propeller was not returned, and to an action on the bond, it was set up as a defence, that on the 18th day of November, 1869, the propeller was overtaken by a gale on the waters of Lake Michigan, and by force of the waves and wind, and without fault of Vogell & Crandell, broken to pieces, and sunk. This defence did not prevail. The court held that the parties were bound, by the terms of their bond, to return the propeller, and the fact that she was destroyed by the "act of God," was no defence. It is there,

among other things, said: "The parties did not provide, by their contract, for any excuse in case of the destruction of the propeller by reason of any accident arising from inevitable necessity, and the law will not supply the omission for the contracting party. Having failed to make provision for their protection in case of disaster, the parties can not now set up as an excuse for the non-compliance with the express terms of the bond, that the propeller was destroyed by the perils of the sea, and the evidence as to its destruction was properly rejected."

This was not an action on the bond of a public officer, and public policy could have no bearing on the decision of the case. The liability was placed on the terms of the bond, the contract existing between the parties. They were the bailees of a specific chattel, and contracted to return it. Here, Bartlett was bailee of a certain quantity of money, and contracted to pay it over. If, as was held, the destruction of the propeller by the act of God was no excuse for a failure to return her, the defence here interposed, that the money was stolen, could form no excuse for a failure to pay over as required by the contract. If Bartlett had desired to relieve himself from responsibility in case the money was stolen, he ought to have provided for a contingency of that character, in the bond. As he failed to do this, he must abide by the terms of his bond, as the courts have no right to impose conditions not found in the contract of the parties. His bond is an absolute undertaking to pay over the money, regardless of its loss by robbery, and while it may work a hardship to require him to do so, I see no way open to escape the liability, unless the plain terms of his contract are disregarded.

Much has been said, in the argument, in regard to the negligence of the railroad company in its failure to keep the door of the office occupied by Bartlett, which led into an unoccupied room, in a safe and secure condition, to prevent thieves from entering the office. I do not regard this as a

material question in the case. It is true that the railroad company furnished Bartlett an office to occupy, and a safe in which to keep the money. If Bartlett, however, thought the office or safe insecure, he should have refused to accept the office until they were made safe, or provided against a loss arising from the negligence of the company, by an appropriate clause in his bond. But after accepting the office, and executing a bond in which he agreed to pay over all moneys received, he is bound by the terms of his bond.

In my judgment, the court erred in the construction placed on the bond upon which the action was brought, and for this error I think the judgment ought to be reversed.